TINA M. NITZKE,

        Plaintiff,

v.                                                              Case No. 24-cv-0932-bhl

FRANK BISIGNANO[1]
Commissioner of the Social Security
Administration,

        Defendant.

## DECISION AND ORDER

Plaintiff Tina M. Nitzke seeks review of the final decision of the Commissioner of the Social Security Administration, denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

On July 1, 2020, Nitzke applied for disability insurance benefits alleging a disability onset date of May 15, 2015, when she was 45 years old. (ECF No. at 13 at 1.) After her claims were denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ). (*Id.*) The ALJ held a telephonic hearing on January 10, 2024 and, in a January 31, 2024 decision, denied Nitzke's disability claim, concluding that Nitzke was not disabled. (*Id.*) The ALJ found that Nitzke had severe impairments from degenerative disc disease of the cervical spine, thoracic outlet syndrome, migraines, fibromyalgia, chronic pain syndrome, depressive disorder, and anxiety disorder. (ECF No. 8-3 at 18.) As a result of these impairments, the ALJ also found that Nitzke was restricted to light work with a number of additional restrictions, and because

---

[1] Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The Clerk of Court is directed to correct the docket.

someone with these restrictions could still perform jobs that exist in the national economy in significant number, the ALJ found that Nitzke was not disabled. (*Id.* at 22, 33–34.) On June 12, 2024, the Appeals Council denied Nitzke's request for review of that decision. (ECF No. 8-3 at 2–4.) Nitzke now seeks judicial review pursuant to 42 U.S.C. §405(g).

## BACKGROUND

According to her application, Nitzke was born on September 21, 1969, completed the 12th grade, and is married with two adult children. (ECF No. 8-6 at 5, ECF No. 8-7 at 47.) She claimed disability as of May 15, 2015, due to migraines, facial pain/trigeminal neuralgia, fibromyalgia, degenerative disc disease, chronic pain disorder, chronic neck pain, thoracic outlet syndrome, fatigue, and anxiety/panic attacks. (ECF No. 8-4 at 4.) Nitzke claims she experiences pain from several conditions, including constant pain in her neck that runs down her left arm and side and limits her reaching ability. (ECF No. 8-3 at 58–60.)

State agency physician consultants reviewed Nitzke's claim and found that she had a history of degenerative disc disease, chronic pain, and fibromyalgia but was capable of light work with postural limitations and a limitation on exposure to heights and hazards. (ECF No. 8-4 at 21–23, 63–66.) On reconsideration, Torra Jones, M.D., a state agency physician, found "[l]imited reach on left occasionally due to [degenerative joint disease], [cervical, lumbar and sacral] pain." (*Id.* at 65.)

State agency psychologists concluded that Nitzke had moderate limitations in the mental residual functional capacity areas of sustained concentration and persistence, social interaction, and adaptation. (ECF No. 8-4 at 17, 25–28, 59, 67–71.) Their narrative opinions explained that Nitzke would be "capable of frequently completing a routine 40-hour workweek [with] occasional interruptions to pace," "would have occasional limitations in responding appropriately to supervisor/peer criticism [without] exhibiting behavioral extremes," and "would be capable of frequently completing routine work tasks that required occasional changes to work setting." (*Id.* at 26–27, 69–70.)

During the hearing, Nitzke testified to her past work from 2008–2014 as a retail store manager and from 2014–2015 as a customer service associate at a bank. (ECF No. 8-3 at 54–57.) She also testified that she worked as a park ranger for about seven months. (*Id.* at 57.) Nitzke testified that her chronic pain kept her from working and that she suffers from anxiety and depression. (*Id.* at 58, 63–64.)

In response to a hypothetical posed by the ALJ, a vocational expert testified about the jobs available to an individual capable of light work with frequent reaching with the left arm, postural limitations, environmental limitations and mental limitations to only simple, routine, repetitive tasks that were not performed at a production rate pace and involved only occasional interaction with the public and occasional changes in work tasks or demands. (ECF No. 8-3 at 69–70.) The expert testified those limitations precluded Nitzke's past relevant work but allowed for the positions of parts inspector (140,000 jobs in the national economy), laboratory-sample carrier (70,000) and package sorter (80,000). (*Id.* at 70.)

At step one of his analysis, the ALJ concluded that Nitzke had not engaged in substantial gainful activity since the alleged onset date. (ECF No. 8-3 at 18.) The ALJ next found at step two that Nitzke had severe impairments of degenerative disc disease of the cervical spine, thoracic outlet syndrome,[2] migraines, fibromyalgia, chronic pain syndrome, depressive disorder, and anxiety disorder. (*Id.*) At step three, the ALJ determined that none of those impairments met or equaled any of the agency's listings of impairments. (*Id.* at 19.) The ALJ then found Nitzke had the Residual Functional Capacity (RFC) to perform light work with additional limitations:

> She can frequently reach overhead to the left (non-dominant arm). For all other reaching, she can reach frequently to the left (non-dominant arm). She can climb ramps and stairs frequently and climb ladders, ropes, or scaffolds occasionally. She can frequently balance, stoop, kneel, crouch, and crawl. She can occasionally work at unprotected heights, in humidity and wetness, in dust, odors, fumes and pulmonary irritants, in extreme cold, in extreme heat, and in vibration. She can work in moderate noise. She is able to perform simple, routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work). She can occasionally interact with the public. She can tolerate occasional changes in tasks or demands.

(*Id.* at 22.) At step four, the ALJ found Nitzke could not perform her past relevant work. (*Id.* at 32.) At step five, however, the ALJ found there were a significant number of jobs in the national economy that Nitzke could perform, specifically, the jobs of laboratory sample carrier and package sorter. (*Id.* at 33–34.) The ALJ therefore determined that Nitzke was not disabled. (*Id.* at 34.)

---

[2] "Thoracic outlet syndrome [] is a group of conditions in which [there is] pressure on blood vessels or nerves in the area between the neck and shoulder. This space is known as the thoracic outlet. Compression of the blood vessels and nerves can cause shoulder and neck pain. It also can cause numbness in the fingers. Common causes of thoracic outlet syndrome include trauma from a car accident, repetitive injuries from a job or sport, and pregnancy." Mayo Clinic Staff, *Thoracic Outlet Syndrome*, Mayo Clinic (June 4, 2024) https://www.mayoclinic.org/diseases-conditions/thoracic-outlet-syndrome/symptoms-causes/syc-20353988.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [a reviewing court] to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review." *Id.* at 1054 (cleaned up) (citations omitted). In reviewing the record, the Court does not displace the ALJ's judgment by reweighing evidence, resolving evidentiary conflicts, or deciding questions of credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Judicial review is deferential and is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). If substantial evidence supports the ALJ's disability determination, the decision must be affirmed, "even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

## ANALYSIS

Nitzke challenges three aspects of the ALJ's decision. First, Nitzke argues that the ALJ did not consider the supportability of a state agency opinion that she could only occasionally reach with her left arm and therefore failed to build an accurate and logical ridge to his conclusion that the opinion was not consistent with the evidence. Second, Nitzke contends that the ALJ's RFC fails to account for deficits in concentration and persistence. Finally, Nitzke contends that the ALJ

did not explain why her allegations were inconsistent with her daily activities. None of these challenges support remand, and the Commissioner's decision will be affirmed.

I. **The ALJ Complied with the Regulatory Requirements and Considered the Supportability and Consistency of Dr. Jones's Opinion.**

The ALJ found persuasive the opinions of the state agency medical consultants who reviewed Nitzke's records at the initial and reconsideration levels and determined that Nitzke could perform a range of light work. (ECF No. 8-3 at 29 (citing ECF No. 8-4 at 3–74).) The ALJ noted "the opinions are supported with citations to the records including [Nitzke's] treatment history" and "are mostly consistent with the evidence showing mostly intact objective findings including normal gait, range of motion, strength, reflexes, and sensation with multiple tender points, reduced strength in her hips, and decreased range of motion in her cervical and lumbar spines on occasions." (ECF No. 8-3 at 29–30 (citing ECF No. 8-8 at 42, 49, 56, 60, 272, 450, & 475; ECF No. 8-9 at 75, 80, 213, 220, 224, 252, 315, 388, & 394; ECF No. 8-10 at 73; ECF No. 8-11 at 4–5; ECF No. 8-12 at 81, 132, 141, & 146–47, ECF No. 8-13 at 136–37, & 225; ECF No. 8-14 at 22, 31, at 34).)

The ALJ did not, however, find persuasive one restriction provided by Tara Jones, M.D. (ECF No. 8-3 at 30.) Dr. Jones stated that Nitzke was limited with left overhead reaching and explained that she was "[l]imited reaching on left occasionally due to [degenerative joint disease], [cervical, lumbar and sacral] pain." (ECF No. 8-4 at 65.) The ALJ explained that the restriction to "occasionally reach with the left upper extremity" was "not persuasive" as the restriction was "not fully supported by a history of thoracic outlet syndrome and [] is inconsistent with the findings of mostly normal range of motion and strength with multiple tender points, tenderness in her shoulders, and decreased range of motion in her cervical spine on occasion." (ECF No. 8-3 at 30 (citing ECF No. 8-8 at 49, ECF No. 8-12 at 165 & 173, ECF No. 8-13 at 137 & 191).) The ALJ restricted Nitzke to "frequently" reaching with the left arm and not "occasional" reaching as opined by Dr. Jones. (ECF No. 8-3 at 22.)

Nitzke argues that the ALJ failed to "comply with the regulatory requirement to consider both the supportability and consistency of [Dr. Jones's] opinion." (ECF No. 13 at 9.) Social Security regulations provide that when evaluating and articulating the persuasiveness of a medical opinion, ALJs should consider supportability, consistency, the medical provider's relationship with the claimant, any specializations, and any other factors that tend to support or contradict the opinion. 20 C.F.R. §416.920c(c)(1)–(5). Of these, supportability and consistency are the most

important. *Id.* §416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . ."); *see also* 20 C.F.R. §404.1520c(b)(2). An ALJ's failure to properly consider and explain application of these factors to medical opinions in the record is reversible error. *See* e.g., *Maynard v. Saul*, No. 20-cv-677-wmc, 2021 WL 3362554, at *3–4 (W.D. Wis. Aug. 3, 2021); *Lenz v. Kijakazi*, No. 20-cv-1810-SCD, 2022 WL 154548, at *5–8 (E.D. Wis. Jan. 18, 2022).

As detailed above, the ALJ considered both supportability and consistency. The ALJ noted that the prior administrative medical findings "are supported with citations to the records including the claimant's treatment history." (ECF No. 8-3 at 29.) Dr. Jones provided citations to the "416–Medical Evidence" and "Finding of Fact and Analysis of Evidence" (FOFAE). (ECF No. 8-4 at 65 (citing ECF No. 8-4 at 56–57 & 52–56).) As for the consistency factor, the ALJ noted the evidence demonstrated "mostly intact objective findings including normal gait, range of motion, strength, reflexes, and sensation with multiple tender points, reduced strength in her hips, and decreased range of motion in her cervical and lumbar spines on occasion." (ECF No. 8-3 at 29.) The ALJ explained that Dr. Jones's specific finding as to reaching was not supported with Nitzke's "history of thoracic outlet syndrome" or the "findings of mostly normal range of motion and strength with multiple tender points, tenderness in her shoulders, and decreased range of motion in her cervical spine on occasion." (ECF No. 8-3 at 30.)

Nitzke argues that medical record evidence cited in the 416–Medical Evidence and FOFAE mandate greater restrictions on reaching with the left arm than found by the ALJ and that the ALJ failed "to confront" this evidence. (ECF No. 13 at 11–12.) The ALJ, however, discussed the evidence cited in the 416–Medical Evidence and the FOFAE and confronted the evidence discussed by Dr. Jones. The ALJ cited a January 2016 rheumatology appointment, also noted by Dr. Jones, where examination notes showed the claimant having no evidence of inflammatory arthritis, chronic muscle and joint pains, stable on medications, diffuse tenderness and improving conditions. (ECF No. 8-3 at 23 (citing ECF No. 8-8 at 54–57) & 8-4 at 57.) The ALJ cited July 2017 examination notes, also noted by Dr. Jones, indicating Nitzke's fibromyalgia was relatively well controlled with medication and she was exercising on a regular basis. (ECF Nos. 8-3 at 24 (citing ECF No. 8-8 at 46–49) & 8-4 at 57.) The ALJ cited a January 2020 MRI, also noted by Dr. Jones, indicating mild bilateral neural foraminal narrowing at the C5/C6 level. (ECF Nos. 8-3 at 24 (citing ECF No. 8-8 at 75) & 8-4 at 57.) The ALJ noted that in March 2021, Nitzke had reported

her medication help with her chronic pain and she was "at the best [she has] been." (ECF No. 8-3 at 24 (quoting ECF No. 8-9 at 247–48).) Dr. Jones noted on March 24, 2021, Nitzke is doing well and "report[ed] 80% reduction in overall symptoms." (ECF No. 8-4 at 53.) The ALJ cited an October 2021 report also noted by Dr. Jones where Nitzke reported 70% reduction in her overall symptoms and was doing well. (ECF Nos. 8-3 at 25 (citing ECF No. 8-9 at 318) & 8-4 at 53.) The ALJ cited a January 31, 2022 report, also noted by Dr. Jones, where Nitzke showed normal gait, range of motion, sensation, reflexes, and strength, and her physician noted she was doing well. (ECF Nos. 8-3 at 25 (citing ECF No. 8-9 at 394–95) & 8-4 at 53.) A September 9, 2022 MRI scan of Nitzke's thoracic spine showed no significant abnormality. (ECF No. 8-3 at 25 (citing ECF Nos. 8-12 at 154–55 & ECF No. 8-13 at 310–11).) In sum, the ALJ properly confronted the medical evidence and adequately addressed the factors of supportability and consistency in evaluating Dr. Jones's opinion. Accordingly, his decision meets the Seventh Circuit's minimal articulation requirement. *See Warnell*, 97 F.4th at 1053.

## II. The RFC Reasonably Accommodated Nitzke's Moderate Limitations in Concentration, Persistence, and Pace.

The ALJ acknowledged that Nitzke indicated that her depression and anxiety caused "difficulties understanding, remembering, following instructions, concentrating, completing tasks, getting along with others, and handl[ing] stress and changes." (ECF No. 8-3 at 21.) The ALJ also recognized that Nitzke "indicated she experienced panic attacks and psychological seizures." (*Id.* at 23.) In assessing Nitzke's mental impairments, the ALJ noted that the record "evidenced mostly normal objective findings with little to no signs of memory deficits," provided multiple citations to the record, and discussed the evidence in detail. (*Id.* at 20–21, 26–29.)

The ALJ's RFC restricted Nitzke to performing simple, routine and repetitive tasks, but not at an assembly level production rate, with occasional interaction with the public and occasional changes in tasks or demands. (*Id.* at 22.) The ALJ found these restrictions were appropriate considering that "[o]n multiple occasions" Nitzke "evidenced mostly intact psychological objective findings such as alertness, full orientation, cooperativeness, pleasantness, and normal speech, behavior, mood, affect, cognition, memory, concentration, attention, insight, judgment, and thought process with anxiousness, irritableness, and depressed mood on occasion." (ECF No.

8-3 at 28 (citations omitted).) The ALJ further found that "on multiple occasions" Nitzke "was found to be in no distress." (*Id.*)

Nitzke first contends that the ALJ "offered nothing to explain how the evidence actually led him to the particular RFC findings." (ECF No. 13 at 13.) This is a nonstarter, as the ALJ explained the restrictions were based on "intact psychological objective findings" and lack of distress. Nitzke next complains that the ALJ rejected all opinions addressing Nitzke's mental functioning and essentially crafted an RFC "with his own unexplained lay conclusion." (*Id.* at 14–15.) The responsibility for assessing a claimant's residual functional capacity resides with the ALJ, *see* 20 C.F.R. §404.1520c(a), and therefore, an ALJ is not required to rely on a particular physician's opinion or choose between the various opinions of a claimant's physicians, *see Schmidt v Astrue*, 496 F.3d 833, 845–46 (7th Cir. 2007).

Nitzke's final contention is that the restrictions are insufficient to accommodate her limitations in concentration, persistence, or pace. (ECF No. 13 at 15–16.) The regulations note that moderate limitation means that a claimant's functioning is "fair." 20 C.F.R. §404 subpart P app. 1(12.00)(2)(c). And, the Seventh Circuit has held that restrictions to "simple" or "repetitive" tasks are adequate to accommodate a moderate limitation in concentration, persistence, or pace. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). In *Pavlicek*, the Seventh Circuit explained that the regulations define "moderate" as "fair" and "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.* at 783. The ALJ's RFC thus sufficiently accommodated Nitzke's concentration-based limitations. *See Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (finding that generic limitations, including limiting a claimant to simple tasks, may properly account for moderate limitations in concentration, persistence, and pace if they adequately account for the claimant's demonstrated psychological symptoms in the record).

The RFC restricting Nitzke to simple, routine, repetitive tasks and the preclusion of a production-rate pace sufficiently addressed her moderate limitations in concentration persistence or pace. In addition, the other mental restrictions, such as occasional interaction with the public and occasional changes, also bear on concentration, persistence, or pace. *See Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020) (finding that a limitation to "simple, routine, and repetitive work tasks" and "simple work-related decisions *in dealing with changes* in the work setting" adequately accounted for the claimant's moderate difficulties in maintaining concentration,

persistence, or pace (emphasis added)). The Court concludes that substantial evidence supports the ALJ's determination of Nitzke's mental and physical limitations and resulting residual functional capacity.

### III. The ALJ's Assessment of Plaintiff's Subjective Symptoms Was Not Patently Wrong.

An ALJ must consider a claimant's subjective statements about symptoms and limitations, *see* 20 C.F.R. §404.1529, however, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. §423(d)(5)(A). The regulations provide a number of factors for an ALJ to consider when assessing a claimant's statements about the intensity and persistence of her symptoms and how they limit her capacity for work. *See* 20 C.F.R. §404.1529(c). Those factors include objective medical evidence, information from a claimant's medical sources about her symptoms, a claimant's daily activities, a claimant's course of treatment, inconsistencies between a claimant's statements, and other evidence. 20 C.F.R. § 404.1529(c)(2)-(4). An ALJ is only required to give reasons for the weight given to a claimant's statements sufficient to provide a fair sense of how the ALJ assessed the claimant's testimony. *See* SSR 16-3p, 81 Fed. Reg. 14166, 14171 (Mar. 16, 2016).

ALJs must consider a claimant's "own description or statement of . . . her physical or mental impairment(s)." SSR 16-3p,82 Fed. Reg. 49462, 49463 (Oct. 25, 2017). This is a two-step process. First, the ALJ looks to "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* Second, if there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citations omitted); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023).

In addressing Nitzke's statements regarding her activities, the ALJ pointed to her ability to perform personal care tasks, cook, drive, and shop:

> As for the claimant's statements about her activities of daily living, the objective findings in the file and the claimant's treatment history are consistent with the less restrictive residual functional capacity assessment provided above. Although the claimant alleged she experienced difficulties lifting, reaching, sitting, standing, walking, squatting, bending, kneeling, climbing stairs, understanding,

> remembering, following instructions, concentrating, completing tasks, getting along with others, and handle stress and changes, the claimant reported she could perform personal care tasks, cook, drive, and shop. During the hearing, she testified she could shop, cook, and clean.

(ECF No. 8-3 at 29 (citation modified).) Earlier in the decision, the ALJ noted that Nitzke's statements were not "consistent with the medical evidence and other evidence in the record." (ECF No. 8-3 at 23.) As previously noted, the ALJ noted multiple medical records where plaintiff's condition was improving, plaintiff had "mostly intact psychological objective findings" and appeared to be in no distress. In addition, the ALJ relied on the prior administrative medical findings that plaintiff could perform a range of light work. (*Id.* at 21, 26, 28, 31–32 (citations omitted).) When evaluating the subjective symptoms analysis, the ALJ's credibility determination will not be reversed "as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) (citing *McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011).

Nitzke's contention that the ALJ's assessment of her subjective complaints was lacking does not withstand scrutiny. (*See* ECF No. 13 at 20–24.) And, any error the ALJ may have made in evaluating Nitzke's activities of daily living is harmless, as the ALJ provided a thorough evaluation of the medical evidence and did not rely on Nitzke's activities in discounting her allegations. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citation omitted). "[A]n ALJ need not discuss every detail related to every factor" in assessing a claimant's subjective symptoms. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) (citing *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)). Nitzke has not shown that the ALJ's evaluation of her symptoms lacked substantial evidentiary support or was "patently wrong." *See Simila*, 573 F.3d at 517.

As previously noted, an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053–54 (citations omitted). An ALJ's decision should be affirmed when the ALJ minimally articulates the basis for her conclusions. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (the minimal articulation requirement is "an obligation that extends no further than grounding a decision in substantial evidence" (citing

*Warnell*, 97 F.4th at 1053)).  Because none of Nitzke's asserted grounds provides a basis for remand and the ALJ's decision is supported by substantial evidence, the decision is affirmed, and the case is dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **DISMISSED**.  The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 9, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge